IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

JACKIE LEE TAYLOR,

      Plaintiff,

  vs.

                            No.    17-2550-JPM-dkv

ARMY REVIEW BOARD AGENCY,

      Defendant.

_____

REPORT AND RECOMMENDATION ON THE
CROSS-MOTIONS FOR SUMMARY JUDGMENT

_____

The plaintiff, Jackie Lee Taylor ("Taylor"), proceeding *pro se*, filed a *pro se* "Complaint for Violation of Civil Rights under 42 U.S.C. § 1983" on the court-supplied form against the defendant, the Army Review Board Agency ("Army Review Board"). (Compl., ECF No. 1.)  Before the court are the parties' cross-motions for summary judgment.  On October 31, 2018, the Army Review Board filed its motion for summary judgment.  (Def.'s Mot. for Summ. J., ECF No. 31.)  Taylor did not file a response in opposition to Army Review Board's motion; instead, he filed his own motion for summary judgment on December 3, 2018.  (Pl.'s Mot. for Summ. J., ECF No. 32.)  On December 18, 2018, the Army Review Board filed its response to Taylor's motion for summary judgment.  (Def.'s Resp. to Pl.'s Mot. for Summ. J., ECF No. 33.)  This case was referred

to the United States Magistrate Judge for management and for all
pretrial matters for determination and/or report and
recommendation as appropriate. (Admin. Order 2013-05, Apr. 29,
2013.)

    I.   PROPOSED FINDINGS OF FACT AND PROCEDURAL HISTORY

This case arises from Taylor's attempts to have his military
discharge record upgraded and to have "incomplete and improperly
documented records" amended or removed from his military records.
(R. at 127.) Taylor was inducted into the U.S. Army on June 26,
1969. (*Id.* at 6.) He was stationed in the Republic of Vietnam in
December 1969 but was quickly placed on thirty (30) days of
emergency leave following the death of his mother. (*Id.* at 50-
51, 157-58, 310.) Taylor did not return to Vietnam after his
emergency leave ended, however, and was missing until returned to
military control until August 17, 1971. (*Id.* at 321.) During
this nearly nineteen (19) month period, Taylor was reported as
"absent without leave" ("AWOL") and was dropped from his unit rolls
as a deserter. (*Id.* at 74, 167, 208.) Taylor was confined under
military control in Fort Campbell, Kentucky from August 20, 1971
to November 15, 1971. (*Id.* at 34, 204, 342.) In August 1971,
Taylor received a "Letter of Transmittal of Court-Martial
Charges," recommending trial by general court-martial. (*Id.* at 33,

44-46, 296, 300-01.)[1]

In lieu of court-martial, Taylor submitted a "Request for Discharge for the Good of the Service." (*Id.* at 44-45, 296-97.) Pursuant to his request for discharge, Taylor underwent a medical examination on September 2, 1971. (*Id.* at 312, 692.) Taylor's examining doctor found that "[a] psychiatric examination is not deemed to be appropriate" because "[t]here [are] no reasonable grounds for belief that this individual is or ever has been mentally defective, deranged or abnormal." (*Id.*) The examining doctor found that Taylor was qualified for active duty enlisted administrative separation under AR 635-200. (*Id.*)

Taylor went AWOL again, this time for a three-day period from November 19, 1971 to November 21, 1971 but was confined under military control again starting November 22, 1971. (*Id.* at 34, 304.) In December 1971, Taylor again received a "Letter of Transmittal of Court-Martial Charges," detailing charges related to both AWOL incidents. (*Id.* at 37-43, 296-300, 305-09). Shortly thereafter, on December 13, 1971, the Army granted Taylor's request for discharge for the good of the service after the charges against him were substantiated. (*Id.* at 47, 52.) Further, the Army

---

[1]Taylor challenges this assertion, but he acknowledged that he faced court-martial charges in his request for discharge. (*See supra* Section II.C.) Further, as noted in Section II.C below, other documents located within Taylor's record contain the same factual information leading to the conclusion that the Army, in fact, preferred charges against him.

informed Taylor that it would issue an undesirable discharge
certificate, as he qualified for administrative elimination under
AR 635-200. (*Id.*) Taylor was discharged from military service
"under conditions other than honorable" effective December 17,
1971. (*Id.* at 6, 50-51.)

In 1976, Taylor filed two applications to upgrade his
discharge from "Under Other than Honorable Conditions" to
"Honorable." (*Id.* at 541-69, 573-75.) In both reviews, the Army
Discharge Review Board conducted "a careful consideration of [his]
military records and all other available evidence" and determined
that he was "properly discharged." (*Id.* at 53, 54.) In 1985,
Taylor filed an application to upgrade his discharge to "General,"
(R. at 482), but that request was subsequently denied as well, (R.
at 481).

In April 2014, Taylor was diagnosed with Generalized Anxiety
Disorder and Post-Traumatic Stress Disorder ("PTSD") Chronic by a
civilian psychiatrist at Midsouth Mental Health Services, Inc.
(*Id.* at 140, 171.) Taylor's multiple "Maintenance Evaluations" at
Midsouth Mental Health Services from summer 2014 indicate
persistent PTSD symptoms.[2]

---

[2]For example, Taylor's evaluations include statements such
as: "he had [PTSD] symptoms when he came back from the Vietnam
war" that are returning due to other stressors in his life, (R. at
139, 172); "the last time he had [PTSD] symptoms he is currently
experiencing was when he left Vietnam," (*id.* at 141, 173); Taylor
experienced "similar feelings when he returned from the war many

In November 2014, a Veterans Affairs doctor performed a "Compensation and Pension" exam and found that Taylor's symptoms did not meet the diagnostic criteria for PTSD under the Diagnostic and Statistical Manual of Mental Disorders ("DSM-5"). (*Id.* at 146, 285.)  The doctor did note, however, that Taylor has another mental disorder diagnosis: "Other Specified Trauma- and Stressor Related Disorder." (*Id.* at 146, 285.)  The doctor reasoned that this was the proper diagnosis because:

> [Taylor] appears to have an adjustment-like disorder with prolonged duration of more than six months without prolonged duration of stressor.  He does not appear in this examiner's opinion to meet full criteria for a diagnosis of PTSD but does meet criteria for ["Other Specified Trauma- and Stressor Related Disorder].

(*Id.* at 146, 285.)  The doctor also noted that Taylor had no history of mental health treatment during his military service and avoided mental health treatment after his discharge, until sometime during 2007 and 2008. (*Id.* at 150, 289.)

On April 9, 2015, Taylor filed an "Application for Correction of Military Record under the Provisions of Title 10, U.S. Code, Section 1552" with the Army Board for Correction of Military Records ("ABCMR") requesting "that [his] other than honorable discharge be upgraded to honorable and that incomplete and improperly documented records be amended and or removed from [his]

---

years ago," (*id.* at 142, 174); and he complained of "nightmares and relations to PTSD symptoms he had after returning from the war," (*id.* at 143, 175).

military records." (*Id.* at 127.)[3]  Taylor requested upgrade of
his discharge due to "Post-Traumatic stress that [he] sustained
while serving in the Vietnam war." (*Id.* at 128.)  In his
application, Taylor states that he sustained PTSD, a mental
illness, while serving in the Republic of Vietnam. (*Id.* at 56,
250.)  Although a model soldier before serving in Vietnam, Taylor
alleges that this disorder affected his ability to serve his
country properly. (*Id.* at 56, 250.)  Taylor claims that the Army
improperly and without competent evidence allowed him to take an
administrative discharge without ever charging him. (*Id.* at 56,
250.)  He also contends that the Army used improperly filled-out
military records. (*Id.* at 56, 250.)  Given that PTSD and PTSD-
related conditions are to be given liberal consideration by the
ABCMR, Taylor argues that his military discharge should be upgraded
to "Honorable." (*Id.* at 56, 250.)  In support of his application,
Taylor submitted the following supporting documentation: his
military records, (*id.* at 278-95); his medical records, (*id.* at
296-322); and a copy of former-Secretary of Defense Chuck Hagel's

---

[3]This is the first of two applications that Taylor filed with
the ABCMR.  On February 1, 2016, Taylor filed an application
requesting receipt of various medals and awards that he never
received. (R. at 18.)  On November 8, 2017, Taylor was informed
that the ABCMR granted him partial relief of his request, (*id.* at
9), and on November 17, 2017, Taylor was informed that they
corrected his military records regarding the issuance of two new
medals and four new badges, (*id.* at 1.)  This application, however,
is not at issue here.

"Supplemental Guidance to the Military Board for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post-Traumatic Stress Disorder" issued on September 3, 2014, (*id.* at 323-26).

On August 2, 2016, the ABCMR granted partial relief to Taylor regarding his request to upgrade his discharge. (*Id.* at 248.)[4] According to its findings, the ABCMR issued a two-part recommendation:

1. The Board determined the evidence presented is sufficient to warrant a recommendation for partial relief. As a result, the Board recommends that all Department of the Army records of the individual concerned be corrected by re-issuing the applicant's DD Form 214 (Armed Forces of the United States Report of Transfer or Discharge), for the period ending 17 December 1971, to show characterization of his service as "Under Honorable Conditions (General)" and his rank/grade as private first class (PFC)/E-3 with a date of rank of 16 December 1969.

2. The Board further determined the evidence presented is insufficient to warrant a portion of the requested relief. As a result, the Board recommends denial of so much of the application that pertains to:

---

[4]At the outset, the ABCMR found that Taylor failed to file an application for correction of military records within the three-year statute of limitations after discovery of the alleged error or injustice, as required by 10 U.S.C. § 1552(b). (R. at 251.) Nevertheless, pursuant to an exception to this limitations period, the ABCMR still elected to conduct a substantive review of this case and "only to the extent relief, if any, is granted, has determined it is in the interest of justice to excuse [Taylor's] failure to timely file. In all other respects, there are insufficient bases to waive the statute of limitations for timely filing." (*Id.* at 251.) Further analysis of the application of § 1552 is included *supra* in Section II.D.

> a.  the removal from his record or amendment of documents that he contends are either incomplete or were improperly completed as part of his separation packet; and
>
> b.  correcting his DD Form 214, for the period ending 17 December 1971, to show the characterization of his service as "Honorable."

(*Id.* at 55, 101, 249.)  In making its decision, the ABCMR considered Taylor's application for correction of military records, his Military Personnel Records, and advisory opinions. (*Id.* at 56, 102, 250.)  The ABCMR upgraded Taylor's discharge to "Under Honorable Conditions (General)" on August 31, 2016 but refused to fully upgrade his discharge to the requested "Honorable" characterization.  (*Id.* at 55, 101, 249, 244.)

Based on the foregoing facts, Taylor filed a *pro se* "Complaint for Violation of Civil Rights under 42 U.S.C. § 1983" on the court-supplied form against the Army Review Board.  (Compl., ECF No. 1.) In his complaint, Taylor alleges:

> I was denied due process of the law by the Army Review Boards Agency when they failed to amend my military records as I had requested.  This Army Review Boards Agency also committed nonfeasance and made false statements in my case.  This same Army Review Boards Agency violated the Privacy Act of 1974 in its failure to amend my military records as I had requested.

(*Id.* at ¶ IV.)  Taylor requests to have his military records "amended to state or show that they are incomplete." (*Id.* at ¶ 5.)  Although Taylor filed a complaint for violation of civil rights under 42 U.S.C. § 1983, it appears that he intended to file

8

an appeal to the district court under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701, *et seq.*, arguing that the Army Review Board's determinations on his petition were arbitrary, capricious, or contrary to law. *See Davis v. Dep't of the Navy, Board for Correction of Military Records*, No. 15-2573-JDT-tmp, 2016 WL 11478168 (W.D. Tenn. June 14, 2016), *report and recommendation adopted*, No. 15-2571-JDT-tmp, 2016 WL 3676825 (W.D. Tenn. July 6, 2016)(construing a *pro se* plaintiff's § 1983 claim as an appeal pursuant to the Administrative Procedure Act, 5 U.S.C. § 701, of an action for failure to upgrade his discharge under 10 U.S.C. § 1552 against the Navy Board for Correction of Military Records).

## II.    PROPOSED CONCLUSIONS OF LAW

### A.    Standard of Review

When a summary judgment motion involves review of a final agency action, the rules that normally govern the summary judgment analysis do not apply because the Court's role in reviewing the administrative record is more limited. *Kentuckians for Commonwealth v. U.S. Army Corps of Engineers*, 963 F. Supp. 2d 670, 677 (W.D. Ky. 2013), *aff'd sub. nom. Kentuckians for the Commonwealth v. U.S. Army Corps of Engineers*, 746 F.3d 698 (6th Cir. 2014)(citing *City of Cleveland v. Ohio*, 508 F. Supp. 2d 508, 827 (6th Cir. 2007); *N.C. Fisheries Ass'n, Inc. v. Gutierrez*, 518 F. Supp. 2d 62 (D.D.C. 2007); *J.N. Moser Trucking, Inc. v. U.S. Dep't of Labor*, 306 F. Supp. 2d 774 (N.D. Ill. 2004)(stating that

a district court's opinion on an appeal from a final agency action
may be triggered by motions for summary judgment, but the judicial
review of an agency's final determination follows standards quite
different from those applied in a typical summary judgment
proceeding)).  When "reviewing administrative agency decisions,
the function of the district court is to determine whether or not
as a matter of law, evidence in the administrative record permitted
the agency to make the decision it did . . . ." *Id.* at 678 (citing
*Sierra Club v. Dombeck*, 161 F. Supp. 2d 1052, 1064 (D. Ariz.
2001)(citing *City & Cnty. of San Francisco v. United States*, 130
F.3d 873, 877 (9th Cir. 1997)).  *See also Covenant Med. Ctr., Inc.
v. Sebelius*, No. 07-15108, 2009 WL 2926442, at *2 (E.D. Mich. Sept.
10, 2009), *aff'd* 424 Fed. App'x 434 (6th Cir. 2001)(in a case
brought under the APA, court's role on summary judgment is to
decide as a matter of law "whether the agency action is supported
by the administrative record and otherwise consistent with the APA
standard of review").  The court's review is limited to the
evidence contained in the administrative record.  *Covenant Med.
Ctr., Inc.*, 2009 WL 2926442, at *2 (citing *Gutierrez*, 518 F. Supp.
2d at 79).

B.    The APA

     The Secretary of the Army, acting through the ABCMR, is
authorized to correct any Army military record when he "considers
it necessary to correct an error or remove an injustice." *See* 10

10

U.S.C. § 1552(a)(1).[5]  "Military record" is defined broadly to
include:

> [A] document or other record that pertains to (1) an
> individual member or former member of the armed forces,
> or (2) at the discretion of the Secretary of the military
> department concerned, any other military matter
> affecting a member or former member of the armed forces,
> an employee or former employee of the armed forces, an
> employee or former employee of that military department,
> or a dependent or current or former spouse of any such
> person.

*Id.* at § 1552(h).

Title 32 C.F.R. § 581.3 "prescribes the policies and
procedures for correction of military records by the Secretary of
the Army, acting through the [ABCMR]."  Members of the ABCMR are
charged with a responsibility to "[r]eview all applications that
are properly before them to determine the existence of an error or
injustice."  *Id.* at § 581.3(b)(4)(i).  An application for
correction of a military record will be considered by a panel of
at least three ABCMR members.  32 C.F.R. § 581.3(e)(3)(i).  The
ABCMR will recommend a correction if it determines that "the
preponderance of the evidence shows that an error or injustice
exists" in an applicant's records.  *Id.* at § 581.3(e)(3)(iii)(A).
A denial of an application is a final action of the ABCMR.  *Id.* at
§ 581.3(g)(2)(i)(A).  An applicant may request reconsideration of

---

[5]The Secretary of the Army may also correct a person's
military records "in accordance with a recommendation made by a
special board."  10 U.S.C. § 1558(a).

11

a denial within one year of the ABCMR's original decision. *Id.* at § 581.3(g)(4)(i).

Pursuant to the APA, when reviewing the decision of an administrative agency, the court may set aside the agency's decision only if it is arbitrary, capricious, an abuse of discretion, not in accordance with law, or unsupported by substantial evidence. *Ivey v. McHugh*, 614 Fed. App'x 257, 261 (6th Cir. 2015)(citing to 5 U.S.C. § 706(2)(A)). An agency ruling is considered arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)).

The arbitrary and capricious standard is exceptionally narrow inasmuch as "a court is not to substitute its judgment for that of the agency." *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 711 F.3d 662, 667 (6th Cir. 2013)(citing to *State Farm*, 463 U.S. at 43). Instead, the court's role is limited to reviewing the administrative record to "determine whether there exists a 'rational connection between the facts found and the choice made.'" *Alliance for Cmty. Media v. F.C.C.*, 529 F.3d 763,

786 (6th Cir. 2008)(quoting *State Farm*, 463 U.S. at 43). "A court reviewing an agency's adjudicative action should accept the agency's factual findings if those findings are supported by substantial evidence on the record as a whole." *Kentucky Waterways Alliance*, 540 F.3d at 473 (quoting *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)). An agency's decision need only be based on substantial evidence on the record so a reasonable mind might accept the agency's conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The Secretary has "broad discretion in administering the correction of military records" pursuant to 10 U.S.C. § 1552(a)(1), when the Secretary "considers it necessary to correct an error or remove an injustice." *Haselwander v. McHugh*, 774 F.3d 990, 996 (D.C. Cir. 2014)(citing *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)). However, the ABCMR's action must be supported by "reasoned decisionmaking." *Id.* (citing *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)(quoting *State Farm*, 463 U.S. at 52)(internal quotation marks omitted). If the ABCMR's "explanation for its determination . . . lacks any coherence," the court "owe[s] no deference to [the ABCMR's] purported expertise" because the bases for its decision cannot be discerned. *Id.* (citing *Tripoli Rocketry Ass'n Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 77 (D.C. Cir. 2006); *Coburn v. McHugh*, 679 F.3d 924, 926 (D.C. Cir.

13

2012)(finding that the ABCMR's decisions were not entitled to any
deference because they were "largely incomprehensible")).
Further, "when the [ABCMR] fails to correct an injustice clearly
presented in the record before it," its action violates "its
statutory mandate [under 10 U.S.C. § 1552]" and is arbitrary and
capricious. *Id.* (citing *Yee v. United States*, 512 F.2d 1383, 1387
(Ct. Cl. 1975)).

C.    The ABCMR's Decision Regarding Taylor's Discharge Level

      With respect to Taylor's request to upgrade his discharge
level to "Honorable," the ABCMR carefully considered Taylor's
contentions. (R. at 66, 112, 262.) The ABCMR granted partial
relief to Taylor by upgrading his discharge characterization from
"Under Other than Honorable Conditions" to "Under Honorable
Conditions (General)." (*Id.* at 55, 101, 249.) The ABCMR
concluded, however, that while PTSD at the time of his AWOL
offenses could reasonably be considered a causative factor in the
misconduct that lead to Taylor's discharge, the length of his first
AWOL and the premeditated nature of his second AWOL suggested "his
overall service did not rise to the level of a fully honorable
characterization of service." (*Id.* at 65, 111, 261.)

      In its motion for summary judgment, the Army Review Board
argues that the ABCMR's decision to upgrade Taylor's discharge to
"Under Honorable Conditions (General)," rather than "Honorable"
was supported by substantial evidence in the administrative record

14

because the ABCMR provided a reasonable and plausible explanation for its decision after considering all aspects of his request. (Def.'s Mot. for Summ. J. 12, ECF No. 31-1.)  Therefore, the Army Review Board contends, the ABCMR's decision was not arbitrary or capricious.  (*Id.*)  Taylor argues that the ABCMR's "decision to not upgrade [his] discharge from the Army" was arbitrary and capricious.  (Pl.'s Mot. for Summ. J. 2, ECF No. 32.)

In this case, the administrative record reflects that the denial of Taylor's request was based upon the ABCMR's finding that Taylor's actions, while arguably attributable to combat-related PTSD, prevented its finding of "fully honorable characterization of service." (R. at 65, 111, 261.)  Taylor argues that the Army never preferred charges against him in August 1971, but instead allowed him to "improperly request discharge" before charges were preferred against him.  (Pl.'s Mot. for Summ. J. 3, ECF No. 32.) Because of this, Taylor argues that the ABCMR's refusal to fully upgrade his discharge was arbitrary and capricious.  (*Id.*)  The ABCMR found, however, that Taylor did in fact receive a "Letter of Transmittal of Court Martial Charges" in August 1971, even though the corresponding charge sheet was not available for review at that time.  (R. at 58, 104, 252.)

The ABCMR's holding is supported by substantial evidence in the administrative record.  Although the August 1971 Letter of Transmittal of Court-Martial is missing, it is inconsequential to

the ABCMR's decision here because other documents located within
Taylor's record contain the same factual information supporting
the conclusion that the Army, in fact, preferred charges against
him. In particular, in lieu of court-martial, Taylor submitted a
"Request for Discharge for the Good of the Service" on August 23,
1971.[6]  (R. at 44-45, 296.)  In his request, Taylor acknowledged
the charges preferred against him and stated that he understood
the implications of the charge – namely that, if his request were
granted, he could have been discharged under other than honorable
conditions. (*Id.* at 44, 296.)  Taylor also acknowledged that he
made this request voluntarily, upon the advice of appointed
counsel, and without being subjected to threat or coercion. (*Id.*
at 44, 296.)  Included in his request, Taylor submitted a written
statement admitting his infraction, stating why he wanted to be
discharged, and containing his reasons for going AWOL.[7] (*Id.* at
33, 300.)

_____

[6]Although Taylor challenges this document as incomplete,
(Pl.'s Mot. for Summ., J. 2, ECF No. 32), the ABCMR found that he
did not do so within limitations period prescribed by 10 U.S.C. §
1522(b), (R. at 57, 67-68, 103, 112-13, 252, 261-62). As explained
further in section II.D., the court finds that this decision was
supported by substantial evidence, and his "Request for Discharge
for the Good of the Service" properly remains in Taylor's military
records.

[7]Specifically, Taylor wrote: "I owe a hospital bill but can't
pay it. I also have another bill. Why I went A.W.O.L. was because
my mother died and my father is blind. Two sisters on welfare.
Why I want to get out is I believe I can help my family a lot."
(R. at 33, 300.)

16

Moreover, an August 23, 1971 letter from Taylor's appointed counsel to the Commanding General of the US Army Training Center at Fort Campbell included seven attachments, one of which is a court-martial charge sheet regarding Taylor's first AWOL incident, listed as "DD FM 458." (R. at 46, 301.) Although the charge sheet itself is not included in the administrative record, other documents located in the administrative record support a finding that the ABCMR's decision was based on substantial evidence "so a reasonable mind might accept the agency's conclusion" that the Army preferred charges against Taylor in August 1971, before Taylor's August 23, 1971 request for discharge in lieu of court-martial. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).

As to Taylor's claim that the ABCMR wrongfully refused to upgrade his discharge characterization to fully "Honorable," the ABCMR's decision is also properly supported by substantial evidence in the administrative record. In making its decision, the ABCMR carefully considered Taylor's request, (R. at 64, 110, 260), reviewing his application for correction of military records, his Military Personnel Records, his medical records, an advisory opinion by the Army Review Boards' Clinical Psychologist, and "Supplemental Guidance to the Military Board for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post-Traumatic Stress Disorder" issued by former-Secretary of Defense Chuck Hagel. (*Id.* at 56, 102, 250.)

17

The ABCMR's review of Taylor's medical records revealed that a medical examination at the time of his discharge deemed a psychiatric examination inappropriate because there were no reasonable grounds for belief that he suffered from any mental illness. (*Id.* at 312, 692.) The ABCMR also found that Taylor was diagnosed with "Generalized Anxiety Disorder, PTSD Chronic" by a civilian mental health professional in 2014, but that an examination by a Veterans Affairs doctor found that his symptom did not meet the diagnostic criteria for PTSD under the DSM-5. (*Id.* at 140, 146, 171, 285.) Based on his medical records, the ABCMR found that Taylor was "diagnosed by a competent mental health professional." (*Id.* at 65, 111, 261.) The ABCMR also found that while "[i]t is impossible to know for certain whether his service-connected PTSD played a role in the misconduct that ultimately led to his discharge," the Army Review Boards' Clinical Psychologist opined in an advisory opinion that the information available made it "reasonable to assume it is likely that his PTSD existed at the time of his service and was a causative factor in the misconduct that led to his discharge." (*Id.* at 65, 111, 261.)

Further, the ABCMR reviewed the "Supplemental Guidance to Military Boards for Correction of Military/Naval Records Considering Discharge Upgrade Requests by Veterans Claiming Post Traumatic Stress Disorder" dated September 3, 2014 and followed the guidance from former Secretary of Defense Chuck Hagel,

18

directing Service Board for Correction of Military/Naval Records
to "carefully consider" PTSD criteria, detailed medical
considerations, and mitigating factors in reviewing requests to
upgrade discharge characterization for administratively discharged
military members. (*Id.* at 63, 109, 259.) Here, the ABCMR found
that, although the "available documentation reasonably supports
the existence of PTSD or PTSD-related conditions at the time of
his AWOL offense(s)," the "inordinate amount of time he went AWOL
(approximately 19 months) in the first instance, as well as his
premeditated AWOL from the confinement facility in the second
instance" did not warrant upgrade to "Honorable" discharge. (*Id.*
at 65, 111, 261.) In support of this decision, the ABCMR reasoned
"[r]esearch has . . . shown that misconduct stemming from PTSD is
typically based upon a spur of the moment decision resulting from
a temporary lapse in judgment; therefore, PTSD is not a likely
cause for either premeditated misconduct or misconduct that
continues for an extended period of time." (*Id.* at 63, 109, 259.)
The ABCMR therefore found that premeditation and the inordinate
length of Taylor's AWOL offenses could justify a partial upgrade
to an "Under Honorable Conditions (General)" discharge, (*id.* at
53, 99, 249), but these factors "suggest his overall service did
not rise to the level of a fully honorable characterization of
service," (*id.* at 65, 111, 261). This finding is consistent with
the Supplemental Guidance provided by the former Secretary of

19

Defense. (*Id*. at  121-23, 136-38, 269-72.)

Based upon review of the ABCMR's decision and the medical records, the ABCMR's final decision to upgrade Taylor to a discharge level of "Under Honorable Conditions (General)" rather than a discharge level of "Honorable" was supported by substantial evidence and, therefore, was not arbitrary or capricious.  The ABCMR's findings were "supported by substantial evidence on the record as a whole," *Kentucky Waterways Alliance*, 540 F.3d at 473 (quoting *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)), and there exists a "'rational connection between the facts found and choices made.'"  *Alliance for Cmty. Media v. F.C.C.*, 529 F.3d 763, 786 (6th Cir. 2008)(quoting *State Farm*, 463 U.S. at 43).  Accordingly, it is recommended that the court grant the Army Review Board's motion for summary judgment and deny Taylor's motion for summary judgment.

D.   The ABCMR's Decision Regarding the Documents in Taylor's Military File

With respect to Taylor's request to remove or amend allegedly incomplete or incorrect documents, the ABCMR carefully considered Taylor's contentions.  (R. at 66, 112, 262.)  The ABCMR concluded that Taylor failed to comply with the requirements of 10 U.S.C. § 1552(b), which sets forth the statute of limitations for claims to correct military records.  (*Id*. at 57, 67-68, 103, 112-13, 252, 261-62.)  It also held that Taylor has not provided substantial

and credible evidence to sufficiently support his request for
relief in light of the "presumption of regularity in the conduct
of governmental affairs." (*Id.* at 66, 112, 262.) The ABCMR
therefore found that, "the evidence presented is insufficient to
warrant . . . the removal from [Taylor's] record or amendment of
documents that he contends are either incomplete or were improperly
completed as part of his separation packet." (*Id.* at 55, 101,
249.)

Taylor contends that the ABCMR's denial of his request to
remove or amend his military records is arbitrary, capricious, and
contrary to law. (Pl.'s Mot. for Summ. J. 2, 4; ECF No. 32.)
Specifically, he argues that both his "Letter of Transmittal of
Court-Martial Charges" and his "Request for Discharge for the Good
of the Service" were incomplete and, thus, should have been removed
from his military records. (*Id.* at 2.) In its motion for summary
judgment, the Army Review Board argues that the ABCMR's decision
not to remove documents from Taylor's file or amend the documents
at issue was not arbitrary, capricious, or contrary to law because
Taylor failed to provide evidence substantially supporting his
request to remove or amend the particular records in his request.
(Def.'s Mot. for Summ. J. 12-13, ECF No. 31-1.)

10 U.S.C. § 1552(b) provides:

No correction may be made under subsection (a)(1) unless
the claimant (or the claimant's heir or legal
representative) or the Secretary concerned files a

> request for the correction within three years after
> discovering the error or injustice. . . . A board
> established under subsection (a)(1) may excuse a failure
> to file within three years after discovery if it finds
> it to be in the interest of justice.

Here, the administrative record reflects that the denial of Taylor's request was based upon its conclusion that Taylor failed to provide substantial evidence supporting his request for relief based upon Taylor's failure to comply with 10 U.S.C. § 1552(b). (R. at 65-66, 111-12, 261-62.) In making its decision, the ABCMR carefully considered Taylor's request, (*id.* at 64, 110, 260), reviewing his application for correction of military records and his Military Personnel Records, (*id.* at 56, 102, 250.)

Taylor filed his request for correction of his military records forty-four (44) years after his discharge from the Army, long past the three-year limitations period located in § 1552(b). (*Id.* at 6, 50-51, 56, 127.) The ABCMR found that Taylor could have, but failed to, either (1) initiate correction while the documents were being prepared, or (2) seek to resolve the inconsistencies in his paperwork at the time of his discharge. (*Id.* at 66, 112, 262.) The time for reasonable discovery of the errors in the challenged documents would have occurred in late-1971, either at the time Taylor: (1) received the "Letter of Transmittal of Court-Martial Charges," (*id.* at 37); (2) prepared his "Request for Discharge for the Good of the Service," (*id.* at 44-45); or (3) reviewed his discharge papers at the time of his

discharge, (*id.* at 6). Therefore, the limitations period on
Taylor's claim to correct said records would have expired in late-
1974. Because Taylor did not file his request for correction of
his military records within three years of the reasonable discovery
of the inconsistencies, substantial evidence supports the ABCMR's
decision that Taylor's request was untimely.

Further, the ABCMR found that because other documents within
Taylor's record and discharge packet revealed the same information
as the contested documents, they did not prejudice or alter the
outcome of Taylor's voluntary decision to submit a request for
discharge. (*Id.* at 66, 112, 262.) Where the information does not
prejudice or alter the outcome of a military decision, it cannot
be said that it would be "in the interest of justice" to excuse
the three-year limitations period for filing. Further, the ABCMR
found that the information in the contested documents could be
found elsewhere in Taylor's records. Because the contested
documents were inconsequential to the outcome of Taylor's request
for discharge, (*id.* at 66, 112, 262), substantial evidence supports
the ABCMR's refusal to excuse Taylor's untimely filing because it
was not "in the interest of justice."

Based upon review of the ABCMR's decision and the
administrative record, the ABCMR's decision was supported by
substantial evidence and, therefore, was not arbitrary or
capricious. Taylor has not submitted any reason for the court to

disturb the ABCMR's findings.  Accordingly, it is recommended that the court grant the Army Review Board's motion for summary judgment and deny Taylor's motion for summary judgment.

### III. CONCLUSION

For the foregoing reasons, it is recommended that the court grant the Army Review Board's motion for summary judgment, deny Taylor's motion for summary judgment, and affirm the decision of the ABCMR.

Respectfully submitted this 29th day of March, 2019.

s/Diane K. Vescovo
DIANE K. VESCOVO
CHIEF UNITED STATES MAGISTRATE JUDGE


### NOTICE

Within fourteen (14) days after being served with a copy of this report and recommended disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute a waiver of objections, exceptions, and further appeal.